**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
CANON MEDICAL SYSTEMS USA, INC.,

                                        Plaintiff,            **REPORT AND**
                                                             **RECOMMENDATION**
                        -against-                            CV 24-7117 (JS) (ARL)

DLC MEDICAL, LLC f/k/a DERBY,
MEDICAL EQUIPMENT, LLC and
ROCK REGIONAL HOSPITAL, LLC,

                                        Defendants.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Plaintiff, Canon Medical Systems USA, Inc., ("Plaintiff"), commenced this action on

October 9, 2024, against DLC Medical, LLC f/k/a Derby Medical Equipment, LLC ("DLC

Medical") and Rock Regional Hospital, LLC ("Rock Regional," and, together with DLC

Medical, "Defendants"), asserting claims for the breach of certain leases described below, breach

of contract and unjust enrichment/quantum meruit.  ECF No. 1.  Defendants did not answer the

Complaint, and, on January 15, 2025, Plaintiff requested a certificate of default as to DLC

Medical.   ECF No. 10.  The Clerk entered the certificate of default on January 23, 2025.  ECF

No. 11.  On February 6, 2025, Plaintiff requested a certificate of default as to Rock Regional,

ECF No. 12, and the Clerk entered the certificate of default on the same day.  ECF No. 13.

Plaintiff moved for a default judgment as to both Defendants on February 25, 2025.  ECF No.

14.  Plaintiff has submitted a proposed default judgment in support of their motion along with a

memorandum of law and the Affidavit of Michael Zimmerman, dated February 25, 2025

("Zimmerman Aff.") and the Declaration of Allison L. Domowitch, dated February 25, 2025

("Domowitch Dec.").  A copy of the proposed judgment with supporting papers was served on

Defendants.  Despite having been served with the motion, Defendants have not opposed the motion.

By order dated April 4, 2025, District Judge Seybert referred the motion to the undersigned to determine whether the motion should be granted and, if so, the appropriate amount of damages to be awarded.  For the reasons set forth below, the undersigned respectfully recommends that Plaintiff be required to demonstrate this Court has diversity jurisdiction by identifying the citizenship of each member of Defendants, and that in the event this Court is satisfied that it has subject matter jurisdiction, Plaintiff's motion for a default judgment be granted as to Defendant DLC Medical and denied as to Rock Regional and Plaintiff be required to provide additional evidence in support of Plaintiff's request for damages.

## BACKGROUND

### I.    Factual Background

The following facts are taken from the complaint as well as Plaintiff's motion for default judgment and the exhibits attached to that motion.

Plaintiff, Canon Medical Systems USA, Inc. is a corporation incorporated in the State of California with a principal place of business located at 1 Canon Park, Melville, New York 11747.  Compl.  ¶ 1.  Defendant DLC Medical is an entity formed in the State of Kansas with a principal place of business located at 200 W Douglas Avenue, Suite 950, Wichita, KS 67202.  *Id*. at ¶ 2.  Defendant Rock Regional is an entity formed in the State of Kansas with a principal place of business located at 3251 N. Rock Road, Derby, KS 67037.  *Id*. at ¶ 2.  Plaintiff asserts that jurisdiction is based upon 28 U.S.C. § 1332 and pursuant to the forum selection clause contained in the Master Equipment Lease Agreement entered on August 30, 2018, between DLC Medical and Plaintiff (the "Master Lease Agreement") and lease schedule thereto (the "First Lease").

According to Plaintiff, the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  *Id*. at ¶ 4.

On July 2, 2018, Defendants DLC Medical and Rock Regional entered into an agreement pursuant to which DLC Medical agreed to lease to Rock Regional certain personal property, equipment, parts, accessories, and repairs (the "DLC Medical-Rock Regional Agreement").  *Id*. at ¶ 6, incorporating by reference, the DLC Medical-Rock Regional Agreement.  Pursuant to the DLC Medical-Rock Regional Agreement, Rock Regional agreed to pay DLC Medical a security deposit of $1.5 million at the time of execution as security for any leases and equipment under the DLC Medical-Rock Regional Agreement.  *Id*. at ¶ 7.  The DLC Medical-Rock Regional Agreement contains the following forum selection clause:

> THIS MASTER LEASE SHALL BE CONSTRUED IN ACCORDANCE WITH, AND SHALL BE GOVERNED BY, THE LAWS OF THE STATE OF KANSAS. LESSEE HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WTTHIN THE COUNTY OF SEDGWICK, STATE OF KANSAS AND IRREVOCABLY AGREES THAT, SUBJECT TO LESSOR'S ELECTION, ALL ACTIONS OR THEIR PROCEEDINGS RELATING TO THIS MASTER LEASE SHALL BE LITIGATED IN SUCH COURTS.

ECF No.1-3, ¶ 29, emphasis in original.

On or about August 30, 2018, DLC Medical entered into the Master Lease Agreement and the First Lease with Canon Medical Finance USA, a program of Plaintiff, pursuant to which DLC Medical leased certain equipment (the "First Equipment").  *Id*. at ¶ 8, incorporating by reference the Master Lease and First Lease.  The Master Lease contains the following forum selection clause:

> This Agreement and all Schedules will be governed by the laws of the State of New York. You consent to the jurisdiction of any court located in New York.

ECF No.1-4, ¶ 15.  The First Equipment was delivered to and accepted by DLC Medical, and DLC Medical executed a Delivery and Acceptance Certificate certifying that the First Equipment was received, accepted, installed and in good operating order.  Compl. ¶ 9.  Plaintiff filed a UCC-1 in connection with the First Lease to further secure and perfect its interest in the First Equipment. *Id*. at ¶ 10. The First Lease provides that DLC Medical shall make payments of $15,096 per month for 72 months.  ECF No. 1-5.

On September 12, 2018, Plaintiff and DLC Medical entered into an Amendment to the Master Lease Agreement (the "Amendment") pursuant to which Plaintiff authorized DLC Medical to sublease the First Lease and other lease schedules under the Master Lease Agreement to Rock Regional. Compl. ¶ 11.  At the same time, DLC Medical and Plaintiff executed an Assignment of Sublease (the "First Assignment") pursuant to which DLC Medical subleased the First Lease and First Equipment to Rock Regional in connection with the DLC Medical-Rock Regional Agreement.  *Id*. at ¶ 12.  Pursuant to the terms of the First Assignment, DLC Medical agreed to remain liable for all payments due under the First Lease and that the payment obligation thereunder was absolute and unconditional for the full term of the First Lease.[1]  *Id*. at ¶ 13.  DLC Medical failed to make all monthly payments due which constituted a default under the First Lease.  *Id.* at ¶ 15.  DLC Medical defaulted on September 20, 2023.  Zimmerman Aff. ¶ 29.  In light of the default, the total amount due was been accelerated.  Compl. ¶ 15.

There is no payment schedule attached to the Complaint or the memorandum of law or affidavits submitted by Plaintiff in support of the motion for default judgment, however, Plaintiff alleges that the amounts owed under the terms and conditions of the First Lease are as follows:

[1] Even though DLC Medical remained liable to Plaintiff, Plaintiff contends that pursuant to the DLC Medical-Rock Regional Agreement and the Master Lease Agreement between Plaintiff and DLC Medical, the First Equipment was for the benefit and use of – and was ultimately delivered to – Rock Regional.  Pl. Mem. at 3; Zimmerman Aff, ¶ 14.

Remaining L/R Balance $461,920.90

Purchase Option Price $ 1.00

Late Fees $ 51,338.14

TOTAL DUE TO PLAINTIFF $519,830.04[2]

Compl. ¶ 14; Zimmerman Aff. ¶ 36 (amount due under First Lease: 31.5 x $15,280.00 = $481,320.00-$19,399.10 = $461,920.90).  With respect to Late Fees, according to the Zimmerman Aff. "[t]he Leases also provide for the payment of late fees calculated as 1.5% of each late payment," and that the "late fees owed under each Lease at the time this matter went into default are set forth above."  Zimmerman Aff. ¶ 37.  However, the Zimmerman Aff. does not proved calculations or documentary support for the late fees.

According to the Complaint, despite frequent demands, DLC Medical has failed to pay Plaintiff the sum of $519,830.04 due under the First Lease.  Compl. ¶ 16.  The only evidence supporting these amounts is the recitation contained in the Zimmerman Aff., no documentary evidence has been provided.   The sole invoice provided by Plaintiff is dated January 25, 2019, states the amount is to be billed to Canon Financial Services, the equipment is to be shipped to Rock Regional, and the amount due is zero.  ECF No. 14-10.

On July 12, 2019, DLC Medical entered into a second lease schedule (the "Second Lease") with Plaintiff pursuant to which DLC Medical leased additional equipment (the "Second Equipment").  Compl. ¶ 19.  The agreement attached to the Complaint is titled "Lease Schedule Number 02 dated August 30, 2018 and "incorporates by reference each and every term of that certain Master Lease Agreement dated August 30, 2018 as though fully set forth herein."

---

[2] The affidavit of Michael Zimmerman, submitted in further support of Plaintiff's motion for default judgment, states that the amount owed by DLC Medical is $513,260.04, which appears to be the correct sum of the amounts listed above.  Zimmerman Aff. ¶ 15.

ECF No. 1-9.  Pursuant to the terms of the Second Lease, DLC Medical was obligated to make 60 payments of $9,172.39. *Id*. The Second Equipment was delivered to and accepted by DLC Medical and DLC Medical executed a Delivery and Acceptance Certificate certifying that the Second Equipment was received, accepted, installed and in good operating order.  Compl.  ¶ 20.

On July 10, 2019, DLC Medical and Plaintiff executed an Assignment of Sublease (the "Second Assignment") pursuant to which DLC Medical subleased the Second Lease and Second Equipment to Rock Regional in connection with the DLC Medical-Rock Regional Agreement. *Id*. at ¶ 21.  As with the First Lease and First Equipment, the Second Lease and Second Equipment was also for the benefit of and subleased to Rock Regional, and, was delivered to and used by Rock Regional.  Pl. Mem. at 4.  The assignment provides that DLC Medical "remains absolutely and unconditionally liable to Lessor pursuant to, and in accordance with" the Master Lease.  ECF No.1-10.  The assignment further provides that "[n]othing contained in this Assignment or in the Sublease shall in any way modify or impair Lessor/Sublessor's obligations and liabilities to Lessor pursuant to the [Master] Lease, including, without limitation, Lessee/Sublessor's obligation to make Lease Payments."  *Id*.  Additionally, the assignment provides that Plaintiff "is not a party to the Sublease and has no obligations or liabilities with respect to the Sublease."  *Id*.

Plaintiff contends that Defendant DLC Medical failed to make the monthly payments due on the Second Lease, resulting in a default under the Second Lease, accelerating all payments. Compl. ¶ 23.  According to the Complaint the amounts owed under the terms and conditions of the Second Lease are as follows:

Remaining L/R Balance $196,119.57

Purchase Option Price $ 1.00

Late Fees $ 30,829.56

TOTAL DUE TO PLAINTIFF $226,950.13

*Id.;* Zimmerman Aff. ¶ 36 (Second Lease: 21.5 x $9,300.00 = $199,950.00-$3,830.43 = $196,119.57). The Zimmerman Aff. does not provide support for the late fees due. According to the Complaint, all credits, if any, to which DLC Medical is entitled are set out above, *id*. at ¶ 24, however no credits are noted. The Complaint alleges and the Zimmerman Affidavit states that despite frequent demands, DLC Medical has failed to pay Plaintiff the sum of $226,950.13 due under the Second Lease. *Id*. at ¶ 25. Other than the unrefuted testimony in the Zimmerman Aff. no documentary evidence is provided.

Pursuant to the Master Lease Agreement, in addition to the amounts owed by DLC Medical set forth above, Plaintiff is entitled to recover default interest at a rate of 18% per annum calculated from the date of default, September 20, 2023. Zimmerman Aff. ¶ 38. According to Plaintiff, the default interest through February 28, 2025 is in the amount of $192,738.56 and will continue to accrue. *Id*.

Finally, the Master Lease Agreement also provides that DLC Medical is liable for Plaintiff's actual attorneys' fees and costs of enforcement. Pl. Mem. at 5, Master Lease Agreement ¶ 11. Plaintiff has submitted the Declaration of Allison L. Domowitch, stating that Plaintiff's attorneys' fees incurred in this matter through February 20, 2025 are $11,400.00. *See* Domowitch Dec., attaching Plaintiff's attorney's fee logs. Plaintiff has also incurred a filing fee in the amount of $405.00 in connection with this Complaint and service fees in the total amount of $329.60 in serving the Complaint on Defendants. Zimmerman Aff. ¶ 39.

## II.    Procedural Background

Plaintiff filed the Complaint against Defendants DLC Medical and Rock Regional on October 9, 2025 asserting claims for breach of the Leases, breach of the DLC-Rock Regional Agreement/Third Party Beneficiary, and unjust enrichment/quantum meruit.  ECF No. 1.  Rock Regional was served with the Complaint on October 16, 2024 and DLC Medical was served on December 2, 2024.  ECF Nos. 5, 9.   DLC Medical did not file an answer and on January 15, 2025, Plaintiff requested a certificate of default as to DLC Medical.   ECF No. 10.  The Clerk entered the certificate of default on January 23, 2025.  ECF No. 11.  According to Plaintiff, Rock Regional contacted Plaintiff's counsel requesting an extension of time to respond to the Complaint, in response to which Plaintiff agreed to an extension through January 10, 2025, however, Rock Regional failed to file an Answer, and did not respond to two subsequent emails from Plaintiff's counsel following up on the same.  On February 6, 2025, Plaintiff requested a certificate of default as to Rock Regional, ECF No. 12, and the Clerk entered the certificate of default on the same day.  ECF No. 13.  Plaintiff moved for a default judgment as to both Defendants on February 25, 2025.[3]  ECF No.  14.  The motion was served on Defendants by regular and certified mail on February 25, 2025.  ECF No. 14-2.  Defendants have not responded to the motion.

Plaintiff seeks an award jointly, severally and collectively against Defendants in the amount of $ $945,083.33.  Proposed Order ECF No. 14-3.

## DISCUSSION

### I.    Legal Standard Governing Default Judgments

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments.  First, the Clerk of the Court enters the party's default.  Then, as here, a motion for a

---

[3] Plaintiff has not moved for default judgment on its claims for unjust enrichment/quantum meruit.

default judgment is made to the district court judge.  A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true").  However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims.  *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged."  *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  The movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound*, 973 F.2d at 159.  "Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not."  *Labarbera v. Frank J. Batchelder Transp. LLC*, No. 08 CV 3387 (SJ)(JMA), 2009 U.S. Dist. LEXIS 7072, 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "Rather, the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds v. Midwest REM Enters.*, No. 20-cv-05896

9

(KAM), 2021 U.S. Dist. LEXIS 125474 (E.D.N.Y. July 6, 2021) (citing *Credit Lyonnais*, 183 F.3d at 155). While the Court need not hold a hearing to determine damages, "[e]ven in the absence of a hearing, . . . the district court cannot simply rely on the plaintiff's statement of damages." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. Jan. 4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Proof of damages must therefore be based on admissible, authenticated evidence." *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.,* No. 09-cv-1076 (RRM)(ALC), 2010 U.S. Dist. LEXIS 103211, 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010).

## II.    Liability

### A.  Subject Matter Jurisdiction

"Before granting a motion for default judgment, a court must first determine whether it has subject matter jurisdiction over the action." *Mt. Hawley Ins. Co. v. Pioneer Creek B LLC*, No. 20-CV-150 (ALC), 2021 U.S. Dist. LEXIS 184501, 2021 WL 4427016, at *3 (S.D.N.Y. Sept. 27, 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 125-27 (2d Cir. 2011)). Plaintiff alleges that this Court has diversity jurisdiction in this matter because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs. Compl. ¶ 4. However, with respect to Defendants, Plaintiff alleges only that Defendant DLC Medical is an entity formed in the State of Kansas with a principal place of business located at 200 W Douglas Avenue, Suite 950, Wichita, KS 67202 and Defendant Rock Regional is an entity formed in the State of Kansas with a principal place of business located at 3251 N. Rock Road, Derby, KS 67037. *Id.* at ¶ 2. Rule 7.1 of the Federal Rules of Civil Procedure requires the filing of a corporate disclosure statement, and states, in

10

relevant part, that "[i]n an action in which jurisdiction is based on diversity under 28 U.S.C. § 1332(a), a party ... must, unless the court orders otherwise, file a disclosure statement," and "[t]he statement must name—and identify the citizenship of—every individual or entity whose citizenship is attributed to that party ...." Fed. R. Civ. P. 7.1(a)(2). On the corporate disclosure statement filed in this action, Plaintiff has indicated that both Defendants are incorporated in and have their principal place of business in another state of their civil cover sheet. However, the caption indicates that both Defendants are limited liability companies. "Where a complaint premised on diversity of citizenship names a limited liability company, or LLC, as a party, all natural persons who are members of the LLC, as well as the place of incorporation and principal place of business of any corporate entities that are members of the LLC must have diverse citizenship from the opposing party." *Lewis v. Laz Parking Ltd., LLC,* No. 25-CV-02341 (MMG), 2025 U.S. Dist. LEXIS 150696, at *2 (S.D.N.Y. Aug. 5, 2025). Plaintiff has failed to identify the citizenship of each of the limited partners of DLC Medical or Rock Regional. Before resolution of Plaintiff's motion, Plaintiff should be required to properly allege diversity jurisdiction. *See Jacobs v. Patent Enforcement Fund, Inc.*, 230 F.3d 565, 568 (2d Cir. 2000) (explaining that a "defect in plaintiffs' pleadings" alleging diversity jurisdiction "does not negate jurisdiction," since what matters is whether "the requisite diversity existed at the time of the initial pleadings"); *see also Lovo v. Investis Digital Inc*., No. 23-cv-1868 (LLS), 2023 U.S. Dist. LEXIS 190870, 2023 WL 7004772 (S.D.N.Y. Oct. 24, 2023), at *3 ("To determine whether subject matter jurisdiction exists, the Court may consider information not included in the pleadings.") (citing *Makarova v. U.S.,* 201 F.3d 110, 113 (2d Cir. 2000)). Because it is unclear whether this Court has subject matter jurisdiction, the undersigned has reported on Plaintiff's motion.

### B. Personal Jurisdiction

As noted above, both Defendants are business entities formed in the State of Kansas, with their principal place of business in Kansas.  Compl. ¶¶ 2, 3.  The Second Circuit has held that "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte. Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Plaintiff bears the burden of demonstrating that the elements of personal jurisdiction are present. *See De Ganay v. De Ganay*, No. 11 CIV. 6490 NRB, 2012 U.S. Dist. LEXIS 174684, 2012 WL 6097693, at *4 (S.D.N.Y. Dec. 6, 2012). It is well-established that a default judgment entered by a court that lacks personal jurisdiction over the parties is void. *Id.* at 138; *see also "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008) (explaining that a lack of personal jurisdiction presents grounds for vacatur of a default judgment for voidness under Rule 60(b)(4)).

With respect to DLC Medical, the Master Lease Agreement contains a provision whereby DLC Medical consents to the jurisdiction of any court located in the State of New York.  Master Lease Agreement, ¶ 15.  In the Second Circuit, a forum selection clause is presumptively enforceable and capable of conferring jurisdiction if the party seeking to enforce the clause can show that: (1) "the clause was reasonably communicated to the party resisting enforcement;" (2) the clause was mandatory and not merely permissive; and (3) "the claims and parties involved in the suit are subject to the forum selection clause." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  Here, Plaintiff has demonstrated that this Court has personal jurisdiction over DLC Medical.

However, with respect to Rock Regional, Plaintiff has not provided any evidence for the Court to find that Rock Regional is subject to personal jurisdiction in New York.  Indeed, the

12

forum selection clause in the DLC Medical-Rock Regional Agreement provides that all proceedings related to the agreement shall be litigation in state or Federal courts located within the County of Sedgwick, State of Kansas.  ECF No. 1-3, ¶29.  Since Rock Regional is a non-signatory to the agreement between Plaintiff and DLC Medical, the forum selection clause contained in the Master Lease Agreement does not apply to Rock Regional absent a "close relationship" between DLC Medical and Rock Regional.  *See, e.g., Shipco Transp., Inc. v. Roll on Roll off Co., LLC,* 684 F. Supp. 3d 156 (S.D.N.Y.2023) ("many district courts in this Circuit apply the closely-related test to determine if a signatory can use a forum selection clause to assert personal jurisdiction over a non-signatory"). Here, the forum selection clause in the agreement between DLC Medical and Rock Regional expressly provides for jurisdiction in Kansas.  ECF No. 1-3, ¶ 29.  Plaintiff has offered no evidence demonstrating that Rock Regional has any presence in New York, or that DLC Medical and Rock Regional have the requisite "close relationship."  Accordingly, the undersigned respectfully recommends that Plaintiff's motion for default judgment against Rock Regional be denied and that Plaintiff's claims against Rock Regional be dismissed for a lack of personal jurisdiction.

### C.  Choice of Law

The Court must next determine what law to apply to Plaintiff's claims.  Pursuant to the Master Lease Agreement between Plaintiff and DLC Medical, "[t]his Agreement and all Schedules will be governed by the laws of the State of New York. You consent to the jurisdiction of any court located in New York."  Master Lease Agreement, ¶ 15.  "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Eco-Fuels LLC v. Sarker*, No. 22-CV-250, 2024 U.S. Dist. LEXIS

13

32636, 2024 WL 779038, at \*6 (E.D.N.Y. Feb. 26, 2024) (quoting *Fin. One Pub. Co. v. Lehman Bros. Special Fin*., 414 F.3d 325, 332 (2d Cir. 2005)). This Court, sitting in diversity, is "bound to apply New York law to determine the validity" of the choice-of-law clauses in the contracts. *Id*. "When a choice-of-law provision exists 'and the jurisdiction chosen by the parties has a substantial relationship to the parties or their performance, New York law requires the court to honor the parties' choice insofar as matters of substance are concerned, so long as fundamental policies of New York law are not thereby violated.'" *Id*. (quoting *Woodling v. Garrett Corp*., 813 F.2d 543, 551 (2d Cir. 1987)).

Plaintiff is a California corporation with its principal place of business in New York. Compl. ¶ 1.  There is no evidence that enforcement of the choice-of-law clause in the Master Lease Agreement would violate New York law, accordingly, New York law should apply. *See Eco-Fuels LLC*, 2024 U.S. Dist. LEXIS 32636, 2024 WL 779038, at \*6 (applying New York law where contract contained choice-of-law clause providing that New York substantive law should apply).

### D.  Breach of Contract with DLC Medical

Accepting the allegations in the Complaint as true, Plaintiff has asserted a valid breach of contract claim against DLC Medical under New York law.  A breach of contract action is generally pleaded by stating "(1) the terms of the contract, (2) the performance by the plaintiff of [its] obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996); *accord Kausal v. Educ. Prods. Info. Exchange Institute*, 105 A.D.3d 909, 910, 964 N.Y.S.2d 550 (2d Dep't 2013).  Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny*

*Energy, Inc*., 500 F.3d 171, 185 (2d Cir. 2007) (citing *Boyce v. Soundview Tech. Group, Inc*., 464 F.3d 376, 384 (2d Cir. 2006)).

Plaintiff in this matter has provided the Master Lease Agreement, First Lease, and Second Lease pursuant to which DLC Medical leased certain equipment which would be subleased to Rock Regional. Compl. ¶ 8. The equipment was delivered by Plaintiff. *Id*. at ¶ 9. Plaintiff has alleged that DLC Medical has failed to make payments as they have become due, thereby defaulting on the agreement, although no documentary evidence has been provided. *Id.* at ¶14. Pursuant to the terms of the Master Lease, the default by DLC Medical has accelerated all payments due under the First and Second Lease. *Id.* Accordingly, the undersigned recommends that DLC Medical be found liable for breach of the Master Lease Agreement.

## II.   Damages

### A.  Breach of Contract

Since the undersigned has recommended that DLC Medical's default constitutes an admission of liability with respect to Plaintiff's breach of the lease claim, and that entry of default judgment is appropriate, the Court must now determine the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc*., 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a default judgment, a default "is not considered an admission of damages" (quotation marks omitted)).  As discussed above, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 U.S. Dist. LEXIS 158456, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and

recommendation adopted, 2020 U.S. Dist. LEXIS 167831, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

The proper measure of damages for breach of contract is the amount necessary to put the plaintiff in as good a position as he would have been if the defendant had not breached the contract. *See Western Geophysical Co. of America, Inc. v. Bolt Assocs., Inc.*, 584 F.2d 1164, 1172 (2d Cir. 1978); *see also Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366, 374, 604 N.E.2d 1356, 590 N.Y.S.2d 425, 429 (1992). Here, Plaintiff claims it is entitled to accelerated payment under the terms of the First and Second Lease. Compl. ¶¶ 14, 23.

The Zimmerman Aff. states that "[t]he Remaining Balances under each Lease were determined by multiplying the monthly payment amount by the number of months remaining unpaid under each Lease, then discounting future payments at a rate of 6% for present value. These amounts were calculated as follows:

First Lease: 31.5 x $15,280.00 = $481,320.00-$19,399.10 = $461,920.90

Second Lease: 21.5 x $9,300.00 = $199,950.00-$3,830.43 = $196,119.57

In the event of a default, Plaintiff is entitled to accelerate the remaining balances due pursuant to the terms of the Leases." Zimmerman Aff. ¶¶36-37. However, the First Lease provides that DLC Medical shall make payments of $15,096 per month for 72 months, not $15,280 as set forth in the Zimmerman Aff. ECF No. 1-5. The Second Lease provides that DLC Medical was obligated to make 60 payments of $9,172.39, and not the $9,300 set forth in the Zimmerman Aff. *Id*. Plaintiff should be instructed to clarify these discrepancies prior to any damage award.[4]

---

[4] Because the amount due to Plaintiff is not determined, the Court cannot reach the issue of prejudgment interest. However, "[u]nder New York law, 'a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right.'" *Midwood Junction v. Puerto del Sol Int'l Inv., S.A.,* No. 15-CV-5181 (RA) (SN), 2016 WL 8905357, at *4 (S.D.N.Y. Dec. 5, 2016) (quoting *U.S. Naval Inst. v. Charter Communs., Inc.,* 936 F.2d 692, 698 (2d Cir. 1991)), adopted as modified by, 2017 WL 1857248 (May 4, 2017); *see also* N.Y. C.P.L.R. § 5001(a) ("Interest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]"). "A plaintiff is thus entitled to pre-judgment interest in addition to any interest that accrues on the

Additionally, the Master Lease Agreement provide for the payment of late fees calculated as 1.5% of each late payment.  According to the Complaint and the Zimmerman Aff. the late fees owed under each Lease at the time of default are $51,338.14 and $30,829.56, respectively. Compl. ¶¶ 14, 23; Zimmerman Aff. ¶¶ 15, 23.  However, Plaintiff has failed to provide any evidence supporting these amounts, and while this court may presume the truth of the statements for purposes of liability, "[p]roof of damages must . . . be based on admissible, authenticated evidence." *Dana Restoration, Inc.,* 2010 U.S. Dist. LEXIS 103211, 2010 WL 3925115, at *2. None has been provided.

Finally, Plaintiff claims it is entitled to be reimbursed for its attorney's fees and costs of enforcement in connection with the default pursuant to the Leases. *See* Master Lease Agreement ¶ 11. "Under New York law, attorney's fees are not recoverable as damages in an action for breach of contract unless expressly agreed to by the parties."  *Proimmune Co., Ltd. Liab. Co. v. Does,* No. 23-7931-cv, 2025 LX 259582, 2025 WL 558568 (2d Cir. Feb. 20, 2025); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2015 U.S. Dist. LEXIS 89995, 2015 WL 4154112 (S.D.N.Y., July 10, 2015) (permitting recovery of attorney's fees as damages for breach of contract claim where the contract explicitly provided that the non-breaching party would be entitled to attorney's fees and costs in the event of a breach).  Here, the Master Lease expressly provides that DLC Medical will be responsible for Plaintiff's attorney's fees in the event of a default.  Master Lease Agreement, ¶11.

"[E]ven if the contract provides for attorney's fees and does not impose any other limitations, such an amount of fees still must be reasonable." *Canon U.S.A., Inc. v. Sysorex Gov't*

---

unpaid principal amount, as dictated by the contract." *Elevation Health, LLC. v. Sun Grp. Partners LLC,* No. 22-CV-10155 (PAE) (VF), 2025 U.S. Dist. LEXIS 18090, at *11, 2025 WL 763983 (S.D.N.Y. Jan. 31, 2025).

*Servs., Inc.*, No. 23-CV-8001 (DLI) (LGD), 2024 U.S. Dist. LEXIS 79881, 2024 WL 1914347 (E.D.N.Y. May 1, 2024). As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn*., 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id*. at 553 (citation omitted); *see Arbor Hill Concerned Citizens Neighborhood Assoc.*, 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc*., 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York*

*State Dep't of Corr. Servs*., 722 F.2d 23, 25 (2d Cir. 1983).  Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments, LLC,* 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011).  Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances."  *Perdue*, 559 U.S. at 552.

Plaintiff seeks $11,400 in attorney's fees for 38 hours of work by attorneys at a blended rate of $300 per hour. ECF No. 14-15. Courts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in cases such as this. *See Canon U.S.A., Inc.*, No. 23-CV-8001 (DLI) (LGD), 2024 U.S. Dist. LEXIS 79881, 2024 WL 1914347 (E.D.N.Y. May 1, 2024) (finds that a range of $400.00 to $450.00 per hour for partners, $300.00 per hour for associates, and $100.00 per hour for paralegals are reasonable hourly rates in a breach of contract case); *Juan v. Son of Polisi, Inc.,* No. 19-CV-04662 (LDH) (PK), 2021 U.S. Dist. LEXIS 14412, 2021 WL 2179344, at *7 (E.D.N.Y. Jan. 24, 2021) ("$350 per hour is a reasonable rate for an attorney with similar experience to [attorney] in an FLSA default judgment case that is routine in nature"). Similarly, courts in this district generally award hourly rates of $200-$300 per hour for senior associates and $100-$200 per hour for junior associates. *See Loc. 1922 Pension Fund v. Broadway Elec. Supply, Co*., No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020).  Plaintiff has submitted billing entries for three attorneys: Brian Fleischer, Esquire, Managing Partner of FFS; Nicola G. Suglia, Esquire, Partner of FFS; and Allison L. Domowitch, Esquire.  Domowitch Dec. ¶ 11.  Mr. Fleischer has been practicing law since 1989, Mr. Suglia has been practicing since 1997; and Ms. Domowitch has been practicing since 2008.

*Id.* at ¶ 12.  Plaintiff's blended rate of $300 per hour for these three experienced attorneys is in line with rates typically awarded in this District.

Having determined the reasonable hourly rates to be used in this case, the Court now turns to the reasonableness of the hours billed.  "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08–CV–3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)).  "[M]ost cases in the default judgment context seek well under $10,000 in attorneys' fees because it doesn't take that many hours to obtain a default judgment." *Panora v. Deenora Corp*., 19-cv-7267 (BMC), 2021 U.S. Dist. LEXIS 231151, 2021 WL 5712119 (E.D.N.Y. Dec. 2, 2021) (citing *Thompson v. Hyun Suk Park*, No. 18-cv-0006, 2020 U.S. Dist. LEXIS 160666, 2020 WL 5822455, at *11 (E.D.N.Y. Sept. 1, 2020) (seeking $7,425 in fees); *Baizan Guerrero v. 79th St. Gourmet & Deli Inc*., No. 18-cv-04761, 2019 U.S. Dist. LEXIS 155382, 2019 WL 4889591, at *11 (E.D.N.Y. Sept. 10, 2019) (seeking $2,025 in fees); *Leon v. Zita Chen*, No. 16-cv-480, 2017 U.S. Dist. LEXIS 46765, 2017 WL 1184149, at *10 (E.D.N.Y. Mar. 29, 2017) (seeking $5,063.05 in fees)).

Here, the record reflects that the attorneys spent a total of 38 hours on this matter in which the Defendants never appeared and no motions were ever filed.  Domowitch Dec., Ex. L. The time records submitted describe what tasks were performed on behalf of Plaintiff, the dates on which such tasks were performed, and the amount of time expended.  A review of the time records provided indicates a significant amount of time was billed to this matter almost a year before the complaint was filed and the billing descriptions indicated the time was spent in connection with an action in which Plaintiff was the defendant; e.g. 4/23/24 entry "Review

20

complaint filed against CFS and related documents; TT plaintiff's counsel re: status of service and settlement;" 5/8/24 entry "Review email from plaintiffs attorney; Review proposed Motion to Dismiss Canon;" 5/21/24 entry "Exchange emails with plaintiffs counsel; Review documents from plaintiffs counsel."  Accordingly, the undersigned recommends Plaintiff be required to resubmit the application for attorney's fees seeking reimbursement for hours spent in connection with this breach of contract.

Plaintiff also seek costs in the amount of $734.60.  Plaintiff has provided a breakdown of the costs as $405 for filing the Complaint and $329.60 for service of the Complaint and the undersigned finds this amount reasonable.   Accordingly, the undersigned respectfully recommends that Plaintiff be awarded costs in the amount of $734.60.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed on the date below.  Counsel for Plaintiff shall serve a copy of this Report and Recommendation on Defendants upon receipt and shall file proof of service with the Court.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:  Central Islip, New York
         August 26, 2025

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge

21